**SIGNED THIS: June 11, 2007**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TOD D. MARSHALL and | ) | No. 06-81935 |
| SHARI A. MARSHALL, | ) | |
| | ) | |
| Debtors. | ) | |

**O P I N I O N**

The Debtors, Tod and Shari Marshall (DEBTORS), purchased a 2002 Ford Windstar minivan 40 days before filing for Chapter 13 relief. The purchase was financed by National Auto Finance Company (NAFCO). In their First Amended Chapter 13 Plan, the DEBTORS acknowledge that NAFCO holds a 910 claim and propose to pay the full amount of the claim, through the Plan, with interest at 10.25%. NAFCO objects to confirmation and demands interest at the contract rate of 24.95%.

In support of its objection, NAFCO contends that it is bad faith, per se, for a debtor to purchase a vehicle 40 days before bankruptcy, fail to make any prepetition payments,

and seek to reduce the contract rate of interest in a Chapter 13 plan. NAFCO requests that confirmation be denied or, alternatively, that the DEBTORS be ordered to pay contract interest.

This is not a situation where the DEBTORS are attempting to strip down the amount of NAFCO's claim by assigning to the vehicle a value less than the contract balance. The DEBTORS propose to treat NAFCO as fully secured. NAFCO argues that this is a situation where debtors who don't otherwise need bankruptcy relief, file for the purpose of welching on a newly executed financing agreement and cramming a low interest rate down the creditor's throat.

NAFCO relies upon *In re Moore,* 24 B.R. 857 (Bankr.N.D.Ill. 1982), where the court denied confirmation of two Chapter 13 plans. In one case, the debtor had two undersecured debts and no unsecured creditors. In the other, the debtor owned a late model Lincoln automobile on which he owed $27,000 and had only $2,700 in unsecured debts. Both plans proposed to pay only 10% to unsecureds. The court determined that each plan was filed in bad faith as the predominant purpose of each was to deal with vehicle loans with little benefit to unsecured creditors.

Here, the DEBTORS list $21,871 in unsecured debts. As of the filing date, they owed $11,855 on the minivan. They also owe $144,000 on their mortgage and are curing, through the Plan, an arrearage of $2,775 and a real estate tax delinquency of $2,752. According to the Amended Plan, the estimated dividend to unsecured creditors is 17%.

This is not a two-party case. The DEBTORS are using the Chapter 13 process to save their house and are dealing with unsecured claims of twice the amount owed on the

2

minivan.  Their Plan is a 5-year plan (the same term as the NAFCO contract) and the payments into the Plan are not affected by the interest rate on NAFCO's claim.  The lower interest rate works only to the benefit of unsecured creditors, who will receive a slightly larger distribution — the DEBTORS receive no benefit as they must pay the same amount into the Plan regardless of what interest rate is paid on NAFCO's secured claim.

This Court is of the view that a debtor's purchase of a vehicle shortly before bankruptcy is highly relevant to the question of valuation under Section 506(a).[1]  With a 910 claim, however, strip down is not available and is not being sought by the DEBTORS.  This Court does not believe the same relevance exists with respect to the interest rate issue.

The present value requirement of Section 1325(a)(5)(B)(ii) is applied as dictated by *Till v. SCS Credit Corp.,* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004).  It is intended to compensate secured creditors for the delay in payments, in recognition of the fundamental economic principle that money paid tomorrow is worth less than if paid today.  The equities of the case have no role to play in the interest rate calculation.  Who mistreated whom is simply not relevant.

The Supreme Court reasoned that the cramdown provision mandates an objective inquiry and "does not require that the terms of the cramdown loan match the terms to which the debtor and creditor agreed prebankruptcy." 124 S.Ct. at 1959.  A court choosing a cramdown interest rate should not consider the "prebankruptcy dealings" between the debtor and creditor.  *Id* at 1960.  Rather, the court should treat similarly situated creditors similarly, and "ensure that an objective economic analysis would suggest the debtor's

---

[1] The purchase price of a vehicle bought shortly before bankruptcy is generally considered to be highly probative of its value as of the petition date.

3

interest payments will adequately compensate all such creditors for the time value of their money." *Id.* The court rejected the presumptive contract rate approach, in part, "because the approach relies heavily on a creditor's prior dealings with the debtor, [so that] similarly situated creditors may end up with vastly different cramdown rates." *Id.*

Yet NAFCO's argument boils down to a plea for equity. NAFCO claims mistreatment because the DEBTORS filed bankruptcy a mere 40 days after purchasing the minivan without making a single installment payment.[2] It is unfair, says NAFCO, to allow the DEBTORS to rewrite the interest rate to less than half the contract rate under those circumstances.

Although a general good faith analysis takes into consideration the totality of the circumstances, NAFCO's position here is more particularized — that the Court should use the DEBTORS' unfair treatment of NAFCO, not to dismiss the case or even to deny confirmation of the Plan, but rather to deviate from the usual calculation of the appropriate interest rate under *Till* and, instead, cram the contract rate down the DEBTORS' throats in the name of equity.[3] As the Seventh Circuit has recognized, however, bankruptcy courts are to decide issues within the confines of the Bankruptcy Code and do not have a roving commission to do equity. *Village of Rosemont v. Jaffe,* 482 F.3d 926, 935 (7th Cir. 2007). In this Court's view, tying the interest rate to be paid on a secured claim to the debtor's

---

[2]The retail installment contract attached to NAFCO's Proof of Claim reflects a $500 cash down payment paid by the DEBTORS.

[3]Although NAFCO's objection to confirmation prays for denial of confirmation of the First Amended Plan, NAFCO made it clear at the hearing that it did not want an evidentiary hearing and that it wanted the Court to rule that the contract rate of interest, not the *Till* rate, had to be used in the Plan based solely on the fact that the purchase occurred shortly before bankruptcy and no installment payments were made. NAFCO does not dispute that the 10.25% rate used in the First Amended Plan is properly determined under *Till*. Because the Court now rejects NAFCO's position, it follows that the First Amended Plan may be confirmed without further hearing.

prepetition treatment of the creditor, the timing of the filing, the number or amount of prepetition payments made, or other equities of the case is simply not within the Court's discretion.[4]

For these reasons, NAFCO's objection to confirmation should be denied and the DEBTORS' First Amended Plan should be confirmed. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###

---

[4] These general equities or inequities are to be distinguished from the risk factors that may properly be part of the application of the *Till* formula approach, such as the nature of the collateral and the duration and feasibility of the plan. *Till*, 124 S.Ct. at 1961.